IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff-Respondent, | ) | Case No. | CV-08-299-E-BLW |
| | ) | | CR-05-61-E-BLW |
| v. | ) | | |
| | ) | **MEMORANDUM DECISION** | |
| C. LYNN MOSES, | ) | **AND ORDER** | |
| | ) | | |
| Defendant-Movant. | ) | | |
| | ) | | |

Pending before the Court is the Motion Pursuant to 28 U.S.C. § 2255 for

Release From Illegal Sentence (Docket No. 1 in civil case and Docket No. 113 in

criminal case)[1] filed by C. Lynn Moses ("Moses").  Having reviewed the record,

and being otherwise fully informed, the Court enters the following Order

dismissing the § 2255 Motion.

---

[1]  Unless otherwise noted, all further docket numbers shall refer to the
underlying criminal case, Case No. CR-05-61-E-BLW.

**Memorandum Decision and Order - 1**

## REVIEW OF 28 U.S.C. § 2255 MOTION

A.   **Background and Summary of Issues[2]**

1.   **Indictment and Trial**

Moses was indicted on three counts of knowingly discharging, or causing to be discharged, pollutants (including dredged and fill material) from a point source or point sources at the Aspens subdivision in Teton, Idaho, into waters of the United States, without a permit, in violation of Clean Water Act provisions 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A). *Indictment* (Docket No. 1). The Indictment alleged that Moses was responsible for activities associated with efforts to control the flow of Teton Creek which ran through the Aspens subdivision, including the excavation and placement of dredge and fill material in the creek bed and along the banks of Teton Creek. *Indictment*, ¶ 3. Teton Creek was described as an intermittent stream that runs adjacent to and through several parcels of the real property that comprise the Aspens subdivision and a tributary of the Teton River which is a tributary of the Snake River, a water of the United States. *Indictment*, ¶ 2.

_____

[2]  To illustrate that Moses has raised his jurisdictional arguments several times before this Court and on appeal and that the Court has accorded Moses every opportunity to present his jurisdictional claims, the Court will provide a lengthy recitation of the procedural history of this case as it relates to those claims.

**Memorandum Decision and Order - 2**

Shortly before trial, the Government filed a Motion in Limine (Docket No. 15) seeking to exclude, *inter alia*, evidence and argument that government officials affirmatively misled Moses and should be estopped from enforcing the CWA.  The Court heard and granted the motion on the second day of trial.  *Minute Entry* (Docket No. 23).

On September 16, 2005, following a three-day trial, a jury returned a verdict of guilty on all charges contained in the Indictment.  *Special Verdict Form* (Docket No. 29).  Sentencing was set for December 21, 2005.  *Minute Entry* (Docket No. 26).  The sentencing was continued until January 6, 2006 to allow Moses additional time to respond to issues raised in the Presentence Report.  *Notice of Hearing* (Docket No. 31).  At the scheduled hearing, Moses moved to dismiss his trial counsel and moved to continue the sentencing to allow him more time to engage new counsel.  The sentencing was again continued to February 27, 2006. *Minute Entry* (Docket No. 41).

### 2.    Post-Trial Motions

Moses' new counsel ("interim counsel") filed a motion to continue the sentencing and a motion for a new trial even though the time for filing a new trial motion had passed.  Docket Nos. 46 and 47, respectively.  Interim counsel's request for a continuance was also based on the fact that the United States Supreme

**Memorandum Decision and Order - 3**

Court had then recently heard oral arguments in two consolidated Clean Water Act cases that he felt might impact his case; namely, *Carabell v. United States Army Corps of Engineers*, 391 F.3d 704 (2005), *cert. granted*, 2005 WL 2493859 (2005), and *United States v. Rapanos*, 376 F.3d 629 (6th Cir. 2004), *cert. granted*, 2005 WL 2593858 (2005).

In his new trial motion, Moses argued that trial counsel had failed to argue against the Motion in Limine and failed to present certain documentary evidence at trial in support of the defense theories of estoppel and consent.   *Mem. Supp. New Trial Mot.* (Docket No. 48).  Moses argued that the documentary evidence supported his contentions that (1) he entered the stream channel and began doing work based upon the representations of the U.S. Army Corps of Engineers ("Corps") that it had no CWA jurisdiction over the area, and (2) in reliance on that position, he entered into an agreement with the Teton County Commissioners to continue his flood control efforts.

Among the documentation submitted with the motion was a newspaper article authored by Bill Scott entitled "Driggs fears worsening flood dangers" ("Scott article").  The article reported, as relevant here, that the Corps stated, at a public hearing held to address flooding concerns, that the Corps had no jurisdiction over the "channelization work" being done by Moses because the stream was

**Memorandum Decision and Order - 4**

classified as intermittent.  *Id.* at 4-5 and Ex. G.  Moses argued that severe flooding in 1981 prompted the Corps to begin to assert jurisdiction in 1982.  He felt that the Corps that he was entitled to present to the jury the defense that the Corps misled him into believing his conduct was lawful.  *Id.* at 9-10.

On February 27, 2006, the Court denied the motion for new trial as untimely and without merit and denied the motion for a continuance directing that sentencing would be held on March 1, 2006.  *Order* (Docket No. 51).  However, at the sentencing hearing, interim counsel withdrew and current counsel, Blake Atkins, entered an appearance.  *Minute Entry* (Docket No. 54).  The Court then heard argument from counsel regarding the Court's jurisdiction to hear a  motion for new trial, allowed additional briefing, and continued the hearing until March 30, 2006.  *Id.*  In that additional briefing, Moses argued that ineffective assistance of trial counsel constituted excusable neglect justifying granting leave to file an untimely new trial motion.  *Mem. Supp. Mot. Extend Time* 4-5 (Docket No. 59).

On March 8, 2006, after reviewing the parties' supplemental briefs, the Court granted Moses' motion for an extension of time to file a new trial motion after finding that failure to file a timely motion was attributable to the conduct of trial counsel.  *Order* (Docket No. 61).

Counsel argued for a new trial based on inadequate representation by trial

**Memorandum Decision and Order - 5**

counsel and failure of the Government to prove a discharge from a point source.
*Mem. Supp. New Trial Mot.* 2-3 (Docket No. 65).  He emphasized trial counsel's
failure to submit the ample evidence of an estoppel defense indicating that he had
been told in 1980 that the Corps had no jurisdiction over his activities.  In support
of that argument, Moses again attached a copy of the Scott  article.  *Id.*, Ex. D.

      In furtherance of his estoppel argument, Moses argued that he performed the
bulk of the flood control work during the first few years when the Corps was
denying jurisdiction and that anything done after that was maintenance work
performed to prevent flooding.  *Id.* at 9.  According to Moses, over the years,
whenever someone from the Corps attempted to assert jurisdiction, he would
advise them of the Corps' early position and the Corps would not take any further
steps to assert jurisdiction.  *Id.* at 11-12.

      Moses argued that there was no evidence to indicate that a pollutant was
discharged in water and that the bulldozer used was a point source.  *Id.* at 24.
More specifically, he contended that there was never any water in the intermittent
stream bed when he performed his excavation activities and that there was a
question of whether discharge of a pollutant into an intermittent stream could affect
interstate or foreign commerce.  He argued that in 1980 the intermittent stream was
not subject to the § 404 permit requirement because the district engineer had not

**Memorandum Decision and Order - 6**

determined it should be.  *Id*. at 34-35.  Finally, he argued that his activity from 2002 to 2004 was permitted under 33 C.F.R.  § 330 and/or Nationwide Permit (NWP) 3, 19, or 31.  *Id*. at 36-38.

The Government opposed the motion for new trial.  *Mem.  Opp'n.* (Docket No. 67).   The Government noted that estoppel by entrapment had been litigated in the Motion in Limine but that Moses was now arguing counsel's failure to argue equitable estoppel.  The Government noted that there was simply no evidence for trial counsel to present regarding the estoppel argument other than Defendant's testimony.   However, minutes of an August 16, 1982 meeting with the Teton County Board of Commissioners were available indicating that Corps' representatives told the Commissioners and Moses that the Corps had jurisdiction over activities in Teton Creek.  *Id*. at 9-10.  In any event, the Government argued that trial counsel offered a good faith defense directed towards the mens rea element of the CWA during which Moses testified about the alleged 1980 meeting denying jurisdiction.  *Id*. at 12-14.

The Government also addressed Moses' argument that there was no water in Teton Creek when the bulldozers were at work.  *Id*. at 15.  The Government noted that because jurisdiction arose under the CWA because Teton Creek is a tributary of an interstate water, there is jurisdiction even if the discharge occurred when no

**Memorandum Decision and Order - 7**

water was in the Creek.  *Id*. at 17-19.

On March 30, 2006, following hearing on the motion for new trial, the Court denied the claim of ineffective assistance of counsel on the claim of estoppel and deemed the other three remaining issues under advisement.  *Minute Entry* (Docket No. 71).   Pursuant to the Court's order, the parties submitted supplemental briefs on those remaining issues.  *Order* (Docket No. 72).  Specifically, the issues briefed concerned ineffective assistance of counsel for failure to raise certain defenses such as whether a bulldozer operating in a dry stream could be a point source, whether the work was permitted under Nationwide Permit 3, and whether the work was exempt from regulation under § 404(f) of the CWA.   Moses again attached the Scott article.  *Mem. Further Supp. New Trial Mot.*, Ex. 1 (Docket No. 75-2).

On May 25, 2006, the Court denied the new trial motion on all grounds and ordered that the sentencing hearing resume on June 9, 2006.  *Order* (Docket No. 77).  In doing so, the Court specifically found that trial counsel was not ineffective and that there was sufficient evidence to support the verdict.

### 3.     Sentencing

On June 2, 2006, the Court granted defense counsel's motion for a continuance based on a scheduling conflict continuing the sentencing hearing until June 19, 2006.  *Mot. to Cont.* (Docket No. 78); *Order* (Docket No. 79).

**Memorandum Decision and Order - 8**

On June 7, 2006, Moses filed a sentencing memorandum challenging several enhancements recommended by the Probation Officer in the Presentence Report. *Sent. Mem.* (Docket No. 80).  He urged caution when interpreting the expanse of Clean Water Act jurisdiction citing *Rapanos* and *Carabell* which were then still pending before the Supreme Court. *Id*. at 7.  He again attached the Scott article, this time arguing against a sentencing enhancement.  *Id*. at 9; Ex. A.

On June 19, 2006, nine months after the verdict was rendered, the sentencing hearing was completed the same day that the Supreme Court issued its decision in *Rapanos v. United States*, 547 U.S. 715 (2006).  After hearing extensive arguments regarding the impact of the *Rapanos* decision, the Court imposed a sentence of 18 months on each count to be served concurrently, a $9,000 fine consisting of $3,000 on each count, a special assessment of $300 consisting of $100 on each count, and one year of supervised release on each count. *Judgment* (Docket No. 87).  The Court stayed execution of the sentence pending appeal.  *Order* (Docket No. 88).

### 4.    Appeal

On June 27, 2006, Moses timely appealed his conviction, denial of his new trial motion, denial of his motion for downward departure, the sentence, and the charge to the jury including certain specified instructions. *Notice of Appeal* (Docket No. 89).

**Memorandum Decision and Order - 9**

On appeal, Moses raised the issues of whether the Court erred in denying his motion for new trial or acquittal when the evidence showed that he only performed work in the storm channel when no water was present and that he was merely maintaining a storm channel that had been created in 1980 when the Corps claimed they had no jurisdiction.[3]  In addressing those issues, Moses argued that there was no evidence of a discharge into water, that he did not violate the CWA under either the plurality or Justice Kennedy approach in *Rapanos*, that a bulldozer in a flood channel cannot be presumed to be a point source, that his activities were exempt from regulation under § 404, and that his conduct was permitted by Nationwide Permit No. 3.

On August 3, 2007, the Ninth Circuit rejected all of Moses' arguments and affirmed his conviction and sentence.  (Docket No. 98).  In doing so, it found that Teton Creek constituted a water of the United States and that Moses discharged pollutants into it.  *See United States v. Moses*, 496 F.3d 984, 993 (9th Cir. 2007).

The Ninth Circuit subsequently unanimously denied his petition for rehearing and his petition for rehearing en banc after no judge requested a vote.

### 5.    Petition for Writ of Certiorari

---

[3]  The Court takes judicial notice of Appellant's Opening Brief filed with the Ninth Circuit on November 7, 2006 in Case No. 06-30379.

**Memorandum Decision and Order - 10**

Moses then moved for continued release pending a decision on his Petition for Writ of Certiorari questioning CWA jurisdiction in light of *Rapanos*.  *Mot. to Cont. Release* (Docket No. 101).  In support of the motion, Moses offered the Joint Memorandum of the Corps of Engineers and the EPA dated June 5, 2007 ("2007 guidance memorandum") setting forth their criteria for asserting jurisdiction after *Rapanos*.  (Docket No. 101-3, pp. 7-18).  Moses contended that under the new guidelines, the area that he was maintaining was not considered a water of the United States.  *Reply* (Docket No. 103).  He again appended a copy of the guidance memorandum.  (Docket No. 103-2, pp. 2-13).  The Court eventually granted the motion after Moses submitted a copy of his Petition for a Writ of Certiorari.[4]

---

[4] In his certiorari petition, Moses presented three issues:

> Whether the lower court's holding that there is Clean Water Act jurisdiction over a flood control channel created over 100 years ago by an irrigation diversion, that carries water only when released by the irrigators who own the water, and which never carries water for more than two months out of the year conflicts with this Court's decision in *Rapanos v. United States*, 126 S. Ct. 2208 (2006), the Agencies' own regulations following *Rapanos*, and the decision of the Eleventh Circuit in *United States v. Robison*, 505 F.3d 1208, 2007 WL 3087419 (11th Cir. 2007).

> Whether the lower court's holding that a violation of the Clean Water Act can occur when it is undisputed that maintenance of this flood channel occurred only

**Memorandum Decision and Order - 11**

In support of his argument that the Ninth Circuit's decision conflicts with the Agencies' own regulations following *Rapanos*, Moses attached a copy of the 2007 guidance memorandum.  Docket No. 110-3, pp. 38-49.

On June 23, 2008, the Supreme Court denied Moses' Petition for Writ of Certiorari.  *Moses v. United States*, 128 S.Ct. 2963 (2008).  This Court then ordered Moses to surrender to the Bureau of Prisons on August 6, 2008.  *Order* (Docket No. 112).

---

when no water was present, there was only removal of gravel debris from the channel and no evidence of an introduction of any outside material into this flood channel and none of the gravel dislodged through maintenance ever made it into a navigable water of the United States conflicts with this Court's decision in *Rapanos v. United States*, 126 S.Ct. 2208 (2006) and the decision of the Eleventh Circuit in *United States v. Robison*, 505 F.3d 1208, 2007 WL 3087419 (11th Cir. 2007).

Whether the lower court's decision upholding the conviction of Mr. Moses conflicts with the D.C. Circuit's decision in *National Association of Home Builders v. U.S. Corps of Engineers*, 440 F.3d 459, 2006 WL 250234 (D.C. Cir. 2006), finding the *Tulloch II* rule (*See*, 33 C.F.R. § 323.2(d)(2)(I) and 40 C.F.R. s. 232.2(2)(I) under which Mr. Moses was convicted to be outside the authority of the Corps of Engineers.

*Petition for Writ of Certiorari*, Docket No. 110-2.

**Memorandum Decision and Order - 12**

### 6.     Section 2255 Motion

On July 17, 2008, Moses timely filed the pending § 2255 Motion again challenging federal jurisdiction over the portion of Teton Creek situated on his property.

In his § 2255 Motion, Moses challenges the Court's jurisdiction on several grounds including (1) estoppel, (2) the Corps' failure to follow procedures for determining jurisdiction after it had originally denied jurisdiction and its failure to follow the 2007 guidance memorandum which stated that the Agencies would not assert jurisdiction over an "upland ditch" containing water less than two months a year, (3) the area contained no wetlands, and (4) there was no significant nexus between his activities and the physical, chemical, or biological integrity of any navigable water of the United States.

On July 31, 2008, Moses filed a Motion to Stay Execution of Sentence (Docket No. 115) pending resolution of the § 2255.  He alleged that his case is extraordinary given that the jurisdictional issues presented in the § 2255 Motion had never been addressed by any court.  *Mem. Supp. Mot. for Stay* 2 (Docket No. 116).  He based his argument on the fact that "the government states in its regulations that it will not exercise jurisdiction over upland ditches" (referring to the 2007 guidance memorandum attached to his § 2255 Motion supporting

**Memorandum Decision and Order - 13**

memorandum as Exhibit C), that the agencies "have already determined that a significant nexus does not exist between an intermittent flow of less than two months in a year and navigable waters of the United States," and that the Government stipulated that there are no wetland issues (referring to a portion of transcript attached to the § 2255 Motion supporting memorandum as Exhibit D). *Id*.

On July 31, 2008, the Government filed its Response to both the § 2255 Motion and the Motion to Stay. *Response* (Docket No. 5 in civil case.)  The Government opposed each motion on the grounds that the jurisdictional issue, having been raised and affirmed on appeal, cannot be relitigated in a § 2255 motion.  The Court agreed as to any issues raised and decided on appeal and found that to the extent that Moses was attempting to raise new issues, he had not demonstrated a high probability of succeeding.  Accordingly, on August 1, 2008, the Court denied the Motion to Stay and directed Moses to surrender to the Bureau of Prisons on August 6, 2008 as previously ordered.  *Order* (Docket No. 117).

### B.    Standard of Law

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the

**Memorandum Decision and Order - 14**

Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  A motion filed pursuant to § 2255 must allege specific facts which, if true, would entitle an individual to relief.  *See United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003)* (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.1996)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  If it does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss the § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

**Memorandum Decision and Order - 15**

### C.    Analysis

#### 1.    Applicable Law

To the extent that Moses' jurisdictional issues have been raised on appeal, they cannot be relitigated in a collateral proceeding. *See United States v. Hayes*, 231 F.3d 1132 (9th Cir. 2000) (refusing to consider a *Brady* claim previously raised and rejected on appeal); *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (dismissing due process and double jeopardy claims in § 2255 proceeding because previously rejected on direct appeal); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("Issues disposed of on previous direct appeal are not reviewable in subsequent § 2255 proceeding."); *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) (noting "the law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion").  *See also United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) (on a law of the case theory, refusing to hear in a § 2255 proceeding a Fifth Amendment claim that had been rejected on the merits on direct appeal).

The fact that a litigant may state an issue in different terms in his § 2255 proceeding from the manner in which it was presented on appeal does not allow collateral review.  *Currie*, 589 F.2d at 995.

**Memorandum Decision and Order - 16**

### 3.   Discussion

Moses has contested jurisdiction throughout his post-trial motions for

judgment of acquittal and new trial, on direct appeal, and in his certiorari petition.

For the most part, his current arguments appear to be identical to those raised on

appeal.  However, some of them appear to be variations of prior jurisdictional

arguments which are precluded under *Currie.*

### a.   Estoppel

In support of his argument that he was advised in 1980 that there was no

CWA jurisdiction because the area received water only intermittently, Moses

attached the same Scott articles to his § 2255 Motion that he had attached at

various stages of this litigation.  *§ 2255 Motion*, App. A.  In support of his

argument that he would "remind" new personnel joining the Corps and suggesting

he needed a permit, he attached a letter advising a Corps' official that he only

entered a contract with Teton County to maintain the "stream channel" after he was

told by the Corps that it had no jurisdiction over "maintenance of the channel and

the irrigation diversion on the intermittent stream."  *§ 2255 Motion*, App. B.  That

April 25, 1996 letter has also been submitted to the Court at various stages.  He

raised the estoppel argument in his new trial motion and on appeal as well.  *See*

*App. Br.* at 31-35.  In other words, Moses has raised the same arguments supported

**Memorandum Decision and Order - 17**

by the same documents before this Court and on appeal.  However, the Ninth

Circuit found that this Court did not err in denying the new trial motion on any

ground and with respect to the estoppel issue concluded:

> Even if he was convinced that the Corps had eschewed
> jurisdiction in 1980, it is not clear why he thought that
> gave him a sempiternal right to continue after jurisdiction
> was duly asserted.  And while his sang-froid (or even
> contempt) in the face of agency demands may show
> either courage or foolhardiness, it does not save him from
> the consequences of his actions.

*Moses*, 496 F.3d at 993.

Clearly, the Ninth Circuit has already considered and rejected this argument.

Accordingly, to the extent Moses is reasserting his estoppel defense, this claim is

subject to dismissal.

### b.   *Rapanos Issues*

Most of Moses' arguments essentially are that *Rapanos* demands a finding

that the Corps had no jurisdiction over the portion of Teton Creek in which his

flood control activities took place.

The Ninth Circuit thoroughly considered these arguments and rejected them.

The court noted that it was undisputed that the Snake River, the Teton River, and

Teton Creek, except for the portion from which water was diverted, are waters of

the United States.  *Moses*, 496 F.3d at 986.  It found that "Teton Creek was at least

**Memorandum Decision and Order - 18**

a tributary in the sense used by the Corps' definition before the Creek was interrupted [by an irrigation diversion structure] . . . [I]t flowed interstate and emptied into the Teton River, which itself emptied into the Snake River." *Id*. at 988. It further determined that it was doubtful that the diversion could have changed the relevant portion of the Teton Creek from a water of the United States into something else. *Id*. at 989.

The Ninth Circuit went on to frame the issue:

> Put most starkly, the question is whether a seasonally intermittent stream which ultimately empties into a river that is a water of the United States can, itself, be a water of the United States.

*Id*. In answering that question, the court analyzed the plurality, concurring, dissenting opinions of *Rapanos* and found that "the Supreme Court unanimously agreed that intermittent streams (at least those that are seasonal) can be waters of the United States." *Id*. at 991.

Because the Ninth Circuit has already considered and rejected Moses' *Rapanos* claims, they are subject to dismissal. The Supreme Court chose not to grant certiorari. Therefore, they are not subject to further review.

### d.    Significant Nexus

Moses argued on appeal that the plurality opinion of *Rapanos* rather than

**Memorandum Decision and Order - 19**

Justice Kennedy's "significant nexus" test for determining jurisdiction should be applied.  A previous Ninth Circuit panel had found that Justice Kennedy's concurring opinion was the controlling rule of law.  *Id.* at 990 (citing *Northern California River Watch v. City of Healdsburg*, 457 F.3d 1023, 1029 (9th Cir. 2006)).[5]  The court rejected Moses' argument that the plurality opinion should control.[6]  The court noted Justice Kennedy's significant nexus requirement between a wetlands and navigable waters.  However, it did not analyze this case in those terms, presumably given its finding that the diversion did not change its character as a water of the United States or because it is so readily apparent that there is a significant nexus between the intermittent portion of Teton Creek and the rest of Teton Creek.[7]

---

[5]  This opinion was subsequently withdrawn and superseded.  *See Northern California River Watch v. City of Healdsburg*, 496 F.3d 993 (9th Cir. 2006). However, the holding of the withdrawn opinion that Justice Kennedy's concurrence was the controlling rule of law did not change.  *See id.* at 999-1000.

[6]  "Both in his brief and at argument, Moses has attempted to induce us to review and eschew *River Watch*.  As Moses should know, we cannot do that." *Moses*, 496 F.3d at 990 n.12.

[7]  There is no doubt that the Ninth Circuit would have found that nexus given its findings that "the volume and power of the flow are high, even torrential;" that Teton Creek continues to flow year-round above the diversion and below the Aspens subdivision; that the disturbance caused by Moses' activities reached both upstream and downstream having a substantial impact; and that "when the time of runoff comes, the Creek rises again and becomes a rampaging

**Memorandum Decision and Order - 20**

Now, in his § 2255 Motion, apparently accepting that Justice Kennedy's approach controls, Moses argues that there was no significant nexus between his activities and the physical, chemical, or biological integrity of any navigable water of the United States.

Moses misstates the significant nexus test as the nexus between his activity and a navigable water.  This clearly is a misstatement of the test urged by Justice Kennedy.   The significant nexus to be considered is that between the water in question and a navigable water.  Justice Kennedy opined that the nexus must related to the stated goals of the CWA and concluded:

> Accordingly, wetlands possess the requisite nexus, and thus come within the statutory phrase "navigable waters," if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as "navigable." When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term "navigable waters."

*Rapanos*, 547 U.S. at 780.

In any event, the Ninth Circuit found that the intermittently dry portion of

---

torrent that ultimately joins its severed lower limb and then rushes to the Teton River, the Snake River, and onward to the Columbia River and the Pacific Ocean." *Moses,* 496 F.3d at 986-87; 991.

**Memorandum Decision and Order - 21**

Teton Creek would be considered a water of the United States under any reading of
*Rapanos*.  Thus, Moses cannot now litigate the significant nexus issue in this
proceeding.

### e.      Determination under Guidance Memorandum

Finally, Moses alleges that the EPA and Corps of Engineers did not make a
determination under the 2007 guidance memorandum issued following the
*Rapanos* decision. *§ 2255 Motion* 3-4; *id.*, App. C.  Had they done so, Moses
concludes that they would have determined that they had no jurisdiction.

Moses alleges that under the guidance memorandum, "a significant nexus
between [his] activity and the physical, biological, or chemical integrity of a
navigable water of the United States is not to be had." *§ 2255 Motion* 4-5.  More
specifically, Moses cites the portion of the guidance memorandum that states that
the Agencies will not assert jurisdiction over "ditches excavated wholly and
draining only uplands that do not carry a relatively permanent flow of water"
which the Agencies define as "waters that typically (e.g., except due to drought)
flow year-round or waters that have a continuous flow at least seasonally (e.g.,
typically three months)."  2007 Guidance Memorandum, p. 11 (Docket No. 7-2 in
civil case).   Finally, he contends that his "activities were to dig a ditch, albeit a big
one, in which to control flood waters that would normally flow through the area in

**Memorandum Decision and Order - 22**

a plane;" that there were no wetlands in the area; that the channel was used for flood control purposes for only two months; and that "this upland ditch" that does not carry a continuous flow for at least three months is viewed by the agencies as being outside their jurisdiction." *§ 2255 Motion* 5-6.

Reliance on the 2007 post-*Rapanos* guidance memorandum is specious.  It is a variation of his significant nexus argument.  Furthermore, obviously the Corps could not have applied guidelines that were not in effect until a year after *Rapanos* was decided.  In any event, the guidance memorandum is just that – a guidance memorandum.[8]

The parties referred throughout trial and appeal to the area in which Moses performed his flood control activities as the "channel" or the "intermittent stream."  The Ninth Circuit referred to it as a tributary of the Teton River albeit an intermittent stream at times due to the irrigation diversion.   Only now does Moses, unilaterally characterize the area as an "upland ditch" which the guideline

---

[8]  The Court notes the Agencies solicited comments on the 2007 guidance memorandum and issued a revised version on December 2, 2008, that appears at the EPA website at www.epa.gov/owow/wetlands/guidance/CWAwaters.html.  In the accompanying "Questions and Answers Regarding the Revised *Rapanos* & *Carabell* Guidance December 2, 2008," the Agencies stated that they will continue to monitor implementation of the *Rapanos* decision in the field but declined to initiate rulemaking at this time.  The website also contained a list of significant pending cases as of June 2007.  Interestingly, the Moses case, although pending appeal at the time, was not listed.

**Memorandum Decision and Order - 23**

memorandum excludes from jurisdiction.

Clearly, Moses totally ignores the evidence in this case that the "ditch" he apparently now claims he was digging was dug in one of three Teton Creek channels and that Teton Creek is a tributary of the navigable Teton River and Snake River.  He is merely stating his prior jurisdictional arguments in different terms.

## CONCLUSION

In its decision affirming Moses' conviction and sentence, the Ninth Circuit observed the following: that Moses "essentially ignored" the Corps' notification in 1982 that it had jurisdiction over the stream, its 1995 cease and desist order, and its 1996 and 1997 letters explaining its regulations; that he treated the warning in 2002 that he needed a permit to work in the creek bed "with his usual disdain." that he continued his work in violation of a 2003 cease and desist order; and that he "was not much interested in the subtleties [of the CWA provisions] involved." *Moses*, 496 F.3d at 986; 988.  In other words, he fought jurisdiction until he was convicted and then sought to excuse his behavior by claiming the Corps misled him into believing that his actions were legal.

Here, in a similar manner, Moses has ignored the findings of the Ninth Circuit and the clear case law that issues raised on appeal cannot be raised in a §

**Memorandum Decision and Order - 24**

2255 motion.  Just as he asked the Ninth Circuit to "eschew *River Watch*" when he should have known that it could not, Moses has asked this Court for relief when he should have known that it cannot revisit issues decided on appeal.  Rather than accepting the decision and the Supreme Court's denial of his certiorari petition, he has essentially demanded that this Court set him free.  This it cannot do.  Moses' only remaining option is to appeal the Court's dismissal of his § 2255 Motion.

## CERTIFICATE OF APPEALABILITY

Given the history of this case, it is reasonable to assume that Moses will appeal the dismissal of his § 2255 Motion.  Accordingly, the Court will anticipate the filing of a notice of appeal.

Moses cannot appeal from the denial or dismissal of this § 2255 proceeding unless he has first obtained a certificate of appealability ("COA").  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A COA will issue only when a movant has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard when the court has dismissed a § 2255 motion or claims within a § 2255 motion on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the

**Memorandum Decision and Order - 25**

denial of a constitutional right.  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).[9]

When the court has denied a § 2255 motion or claims within the motion on the

merits, the movant must show that reasonable jurists would find the court's

decision on the merits to be debatable.  *Slack,* 529 U.S. at 484 (2000); *Allen v.*

*Ornoski,* 435 F.3d 946, 951 (9th Cir. 2006).  The standard "requires an overview of

the claims in the habeas petition and a general assessment of their merits," but the

court need not determine that the movant would prevail on appeal.  *Miller-El v.*

*Cockrell ,* 537 U.S. 322, 336 (2003).  In ruling on the COA motion, the district

court shall either indicate which issue or issues satisfy the standard for issuing a

COA or indicate why a certificate should not be granted.  *United States v. Asrar,*

116 F.3d 1268, 1270 (citing 28 U.S.C. § 2253(c)(3)).

In this case, the Court determined that Moses' 2255 Motion is subject to

dismissal on the grounds that the issues raised were previously raised and decided

on appeal thereby precluding collateral review.  The Court finds that reasonable

jurists would not find this determination to be incorrect or reasonably debatable.

Accordingly, the Court will not issue a request for a Certificate of Appealability.

---

9  The requirements for a certificate of appealability for a § 2255 appeal do not appear to differ from the requirements for a certificate of appealability for a § 2254 habeas petition related to a state conviction. *See United States v. Asrar,* 116 F.3d 1268 (9th Cir. 1997).  Therefore, cases addressing the requirements in the context of a § 2254 proceeding are pertinent to a § 2255 proceeding as well.

**Memorandum Decision and Order - 26**

However, Moses is advised that he may still request a COA from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b).

## ORDER

IT IS HEREBY ORDERED that Moses' Motion Pursuant to 28 U.S.C. § 2255 for Release From Illegal Sentence (Docket No. 1 in civil case and Docket No. 113 in criminal case) is DISMISSED.

IT IS FURTHER HEREBY ORDERED that Case No. CV-08-299-E-BLW is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that if Moses files a notice of appeal, the Clerk of Court shall advise the Ninth Circuit that it has declined to issue a Certificate of Appealability.

IT IS FURTHER ORDERED that if Moses files a notice of appeal, the Clerk of Court shall forward a copy of this Order to the Ninth Circuit Court of Appeals. If requested by the Ninth Circuit, the Clerk of Court shall forward that portion of the record beginning with the filing of the 28 U.S.C. § 2255 motion.  Otherwise, the Ninth Circuit shall obtain the record from the District Court website at www.id.uscourts.gov.

**Memorandum Decision and Order - 27**

DATED:  **March 19, 2009**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 28**